Final Decision
I Background
This case arises out of Richard Prevost’s termination from employment as a Safety Manager for the Oneida Bingo & Casino Employee Services Department. Mr. Pre-vost was terminated on May 7, 2008, for a pattern of discourteous and unprofessional *88 behavior toward fellow employees within a year. Mr. Prevost makes several arguments as to why he should not have been terminated, including a claim his behavior was caused at least in part by certain medications he was taking. After his termination, Mr. Prevost appealed to the Area Manager who upheld his termination. He then appealed to the Oneida Personnel Commission who also upheld his termination. We affirm.
A Factual background
On Tuesday, April 8, 2008, Appellant was involved in an incident where he confronted one of his subordinates, Steve Con-to, in a public place in the Casino. The issue involved Steve’s follow-up on a security procedure at the casino. Mr. Prevost was unhappy with the way Steve handled the matter because he had chosen to get the information not from Mr. Prevost but from a security officer. Mr. Prevost proceeded to yell and berate Mr. Conto for asking a casino security officer for information. At which point Mr. Prevost stated, “Security doesn’t know its a* * from a hole in the ground.” There were several witnesses who saw the confrontation and corroborated each other’s versions of events. Mr. Prevost was loud and rude and casino customers observed the incident. This incident was the trigger for Mr. Prevost’s termination from employment.
This was not the first time Mr. Prevost had been disciplined. On February 21, 2007, Mr. Prevost received a three-day suspension. On September 13, 2007 the Appellant was suspended for four days for violation of the Oneida Personnel Policies and Procedures, Personal Actions and Appearance. On December 20, 2007, the Appellant was suspended for five (5) days for the same type of unprofessional conduct.
These previous incidents combined with the April 8, 2008 incident, led to Mr. Pre-vost’s termination from employment on May 7, 2008. The specific grounds were Mr. Prevost’s violation of the Oneida Personal Policies and Procedures, Section V.D.2.IV; Personal Actions and Appearance, j., k., and V.D. 3 and Accumulated Disciplinary Actions Warranting Termination, b. The April 8, 2008 incident was Mr. Prevost’s third incident within 12 months.

B. Procedural History.

On May 16, 2008, Appellant appealed his termination to the Area Manager. The Area Manager upheld the termination. The Appellant timely appealed that decision to the Oneida Personnel Commission which also upheld the decision to terminate.
On August 26, 2008, the Appellant filed an appeal of the Personnel Commissioner decision with the Oneida Tribal Judicial System (OTJS). On September 2, 2008, the Oneida Tribal Judicial System Initial Review Panel denied the Appellant’s appeal for Appellant’s failure to sufficiently allege one of the criteria in Rule (9) of the Rules of Appellate Procedure. On September 15, 2008, the Appellant filed a Motion for Reconsideration of the September 2, 2008 Initial Review denial, this time alleging procedural irregularities. On September 22, 2008, the OTJS Initial Review Panel granted the Motion for Reconsideration and accepted the appeal.

C. Appellant’s Position

The Appellant attacks the decision to terminate his employment in several ways. First, he argues that he was taking certain medications which caused him to be more susceptible to outbursts such as what happened on April 8, 2008. Mr. Prevost had heart surgery in early 2006 and has been *89 on medications ever since. He asserts that his medications and their side effects should have been taken into account when considering disciplinary action against him.
The Appellant alleges he is unfairly being held to a higher standard and that he is uncertain of what the higher standard is.
The Appellant further claims that the Respondent created a hostile work environment because he was told in December 2007 that he was subject to progressive discipline due to his misconduct. He also alleges his supervisor was “unfriendly” in December 2007 in informing him of this.
Appellant claims that the Area Manager did not perform a complete investigation with one of the witnesses to the April 8 incident, Georgianna Mielke.
Finally, Appellant argues the decision in Oneida Bingo & Casino v. Betters, — Am. Tribal Law-, 2002 WL 34528487 (7/30/2002) supports overturning his termination from employment because the second of his two previous suspensions occurred about five months before he was actually terminated.
II Issue
Were there procedural irregularities in the Oneida Personnel Commission Decision dated August 11, 2008?
Is the decision of the Oneida Personnel Commission supported by the greater weight of the credible evidence?
III. Analysis
Were there procedural irregularities in the Oneida Personnel Commission Decision dated August 11, 2008?
No. Mr. Prevost tries to argue that certain breaks taken by the OPC during its hearing and the appearance of some Personnel Commissioners may have affected the outcome of his hearing, but Mr. Pre-vost is long on accusations and short on concrete details. We have reviewed the hearing record and proceedings and cannot find any procedural irregularities which can be shown to have prejudiced Mr. Prevost or affected the outcome of the case.
Is the decision of the Oneida Personnel Commission supported by the greater weight of the credible evidence?
Yes. The OPC carefully reviewed the testimony and other evidence it received and found there was sufficient credible evidence to uphold Mr. Prevost’s termination from employment. We review the issues raised by Mr. Prevost.

A. Medications.

There were a couple of problems with Mr. Prevost’s claim that his medication contributed and/or excused his behavior. First, the OPC found Mr. Prevost had on only one occasion provided a list of his medications to his supervisor. This was in November 2006. Though Mr. Prevost claimed he had provided updates, the OPC found the testimony of the supervisor and her assistant, who stated they had not received updates, more credible on this point. The OPC also found, through testimony by the Respondent, there was no evidence provided to the OPC showing the medication the Appellant was taking impacted his ability to perform his job duties. It would only seem reasonable that if a person was taking medication that might affect his job duties/responsibilities, this information would be provided to the employer stating that fact. The Appellant failed to provide such documentation to the Respondent therefore the Appellant’s claim is without merit.
In its decision, the Oneida Personal Commission found through evidence and testimony that the Appellant was non-compliant with the Drug & Alcohol Free *90 Workplace Policy, Art. VI, Sec. 6-1., which provides that an employee taking medication which may alter their physical or mental ability must report this fact in writing to their immediate supervisor. Although Mr. Prevost provided a list of medications in November, 2006, he did not communicate that his mental or physical ability was altered nor did he update the list after November, 2006. Finally, there is no evidence in the record which states the types of medications at issue and whether they actually may cause mood swings or make a person susceptible to the type of behavior in which Mr. Prevost engaged.

tí. Higher standard.

Mr. Prevost alleges he was held to a higher standard. Apparently this term may have been used by the supervisor at the hearing or previously. Our view of this issue is that Mr. Prevost, as a supervisor himself, is expected to behave professionally and set an example, in the general way that is expected of management. There is nothing in the record to suggest the employer applied the provisions of the Blue Book other than in the normal and expected way, to Mr. Prevost

C.Hostile work environment.

Mr. Prevost claims there was a hostile work environment due to his being told in December 2007 that he was subject to progressive discipline. All individuals employed by the Oneida Tribe are subject to progressive discipline as stated in the Blue Book. We understand where an employee may feel uncomfortable or vulnerable when disciplinary actions against him accumulate and he may be terminated from employment. But this situation was created by Mr. Prevost. His own actions brought about the disciplinary actions and warnings about his job status. We see nothing in this record which supports a finding of a hostile work environment.

D. Georgianna Mielke.

Mr. Prevost claims his cause was prejudiced because the Area Manager’s interview of Ms. Mielke was cut short when the Area Manager was called away on an emergency. Georgianna Mielke witnessed the April 8, 2008 incident when Mr. Pre-vost confronted Steven Conto. When considering the entire situation, Mr. Prevost’s claim is not supported. Although Ms. Mielke’s interview was cut short, the Area Manager testified he was satisfied with the information he received during the 20-minute interview. Furthermore, there were at least three other witnesses to the April 8, 2008 incident, Steve Conto and two security guards all gave extensive interviews that were documented in the record.

E. The five-day rule.

Mr. Prevost cites Oneida Bingo & Casino v. Betters, 02-AC-005, — Am. Tribal Law-, 2002 WL 34528437 (7/30/2002) arguing that because his termination occurred about five months after his second accumulated suspension, his termination cannot be based on the two previously accumulated suspensions. (See also Sec. V.D.5.b. which requires disciplinary action to occur within five days of the completion of the investigation.)
In the Betters case, the employee had accumulated two suspensions within a 12-month period. However, at the time of the second suspension, the supervisor decided not to terminate Ms. Betters’ employment. A couple of months passed and a different supervisor was reviewing the file and saw the accumulated suspensions and terminated Ms. Betters’ employment. The OPC and this Court overturned the termination, ruling that the first supervi *91 sor’s discretionary decision should not be changed two months after the fact.
We understand Mr. Prevost’s argument; however the Betters case does not help him. We read his termination as based on progressive discipline. This is Mr. Pre-vost’s third incident in the last 12 months. He previously had two suspensions, first for four days and then for five. His supervisor was aware of this and chose not to terminate him thus giving Mr. Prevost another chance to correct his situation. It is entirely reasonable that after the April 8, 2008 incident, Mr. Prevost’s supervisor decided it was time for his employment to end based on progressive discipline. It is not as though someone decided well after the fact, as in Betters, that Mr. Prevost should be terminated solely on the basis of the two previous suspensions. Mr. Pre-vost had another incident and therefore his supervisor concluded that termination was warranted. While the two previous suspensions were not used by his supervisor to terminate Mr. Prevost at the time the second suspension occurred, they do count against Mr. Prevost as negative disciplinary actions on his record. The supervisor was correct to take all three disciplines into account when assessing discipline for the April 8th incident.
In regard to the allegations of Mr. Pre-vost against the Oneida Personnel Commissioners who heard his case, this Appellate Body will address the issues. Mr. Prevost indicated that there were some unusual occurrences during his hearing before the Oneida Personnel Commission. Mr. Prevost mentioned that at one point one of the Commissioners abruptly left during the hearing (stormed out). Another allegation is that there was open conflict between two of the Commissioners during the hearing. Finally, there was an allegation one of the Commissioners entered the hearing room in tears.
We don’t know if these allegations are true. However, Mr. Prevost raised them as issues in his appeal to this Appellate Body. While we decided the issues in this case based on the facts and the law, nevertheless allegations of unprofessional judicial demeanor were an unwelcome distraction.
To the greatest extent possible, we encourage Oneida Personnel Commission Hearing Officers to conduct themselves with the highest regard for professionalism and judicial decorum when hearing cases. The perception of the parties is shaped by many things, only one of which is the outcome of the case.
IV. Decision
This Appellate Court upholds the decision of the Oneida Personnel Commission, affirming Mr. Prevost’s termination from employment.